By the Court.
Woodruff, J.
—The liability of the defendants upon the facts alleged in the complaint is insisted upon, upon two principal grounds:
First. That the statutes of Hew York, giving an action where death is caused by the wrongful act, neglect or default of another, *78 are of universal application, and give in this state a remedy against all who by a wrongful act, default or neglect have caused the death of any person, wheresoever the cause of death may have happened; and
Second. That those statutes are at all events applicable to every case of death so caused by a corporation created under our own statutes.
I. The question before us will be rendered more simple, if we consider the soundness of this second proposition before noticing the first, which we regard as the main branch of the inquiry.
In April, 1849, by act of the Legislature of the State of Hew York, William H. Aspinwall and twelve others, - and their associates, successors and assigns were constituted a body corporate by the name of “ The Panama Railroad Company,” for the purpose of constructing and maintaining a railroad with one or more tracks and all convenient buildings, fixtures, machinery and appurtenances across the Isthmus of Panama in the republic of Hew Granada, under the grant made by the said republic to William H. Aspinwall, John L. Stephens and Henry Chauncey, and of purchasing and navigating such steam or sailing vessels as may be proper and convenient to be used in connection with the said road, and for such purposes, all the necessary and incidental power is hereby granted to said corporation.
The charter then fixes the amount of the capital stock; prescribes the number of directors who shall manage the concerns of the company; provides that they shall be elected annually in the city of Hew York, and makes other provisions relative to voting, the payment of subscriptions, the by-laws, &c., for the management of its affairs, and by section 7, enacts, “It shall be lawful for the said corporation to contract with the said William H: Aspinwall, John L. Stephens and Henry Chauncey for the purchase of all the rights, privileges and immunities granted to them by the said republic of Hew Granada and for the purchase of the lands granted to them by the said republic, and to receive a conveyance of and hold the same in like manner as the said William H. Aspinwall, John L. Stephens and Henry Chauncey, now do or can do, and to lease or sell and convey any of such lands which the said corporation shall not deem it necessary to retain, and to build and ■ construct all such buildings, piers, *79 docks, basins and harbors on the said lands as the said corporation may deem expedient, in like manner as the said William H. A spin wall, John L. Stephens and Henry Chauncey can do under the said grant.”
These are all of the provisions of the act which in any manner mention anything which is to be done or which may be done by the defendants upon the Isthmus of Panama; and there is not a word in the act which defines the mode or manner of the. defendants’ action within the limits of New Granada, or which prescribes the liabilities or responsibilities under which the corporation shall do the things which they are privileged to do under the grant from that republic.
It is hereupon insisted that as the defendants exist as a corporation only by virtue of the laws of this state, and hold their corporate franchise, immunities and privileges as a gift conferred by those laws, all their acts are done and all their business is transacted in subordination to all laws of this state. That in judgment of law all their acts are done within the limits of this state, because, in a legal sense, they have no existence and no power to act out of the jurisdiction of the power that created them; that, in a legal sense, they cannot leave this state, and therefore for every act, default or neglect they are responsible to all the consequences which the laws of this state impose. These suggestions, however specious or plausible, seem to us unsound in reason and untrue in fact.
First. These defendants do and may, by the express permission contained in the charter, act out of the limits of this state, and within the country of another independent government. The whole purpose and design of their incorporation was to enable them in their corporate capacity to do so. To construct and maintain a railroad on the Isthmus of Panama, is by no legal fiction to do an act within the limits of New York. It is quite true that the State of New York cannot confer power on the defendants to do this in a foreign country, without the consent of the government of that country, but it is not for New York nor her legal tribunals to say that either in theory or in fact, the defendants have not power to act in that country when the Legislature have unqualifiedly consented that they may do so. As between the two countries the act of the Legislature of *80 this state is permissive only, but when the defendants have removed all obstacles, or received the sanction of Eew Granada, their power is full and complete, and they exist as a corporation, and act in the construction and maintenance of their railroad, in every sense, in that country, as truly as an individual citizen of Eew York would do. Whether in Eew Granada they have actually received corporate powers or enjoy corporate immunities is not at all material to the present question: Non constat but there they actas an association merely, under the fullest weight of joint liability as individuals; but that, if it were so, would not affect their present position in the courts of this state. In those tribunals they stand clothed with all necessary power, to go, by any of the instrumentalities by which they can act anywhere, and build and maintain their road in the republic of E"ew Granada; and in that they can no more be said to be acting in this state, than could one of our citizens who, residing here, should by his agents do the same thing in E"ew Granada.
In the maintenance of their railroad there, or in other words, in acting there, they do not put off the law of E"ew York, but execute the law itself; they do just what E"ew York law in express terms authorizes them to do. In a word, when this state has authorized the defendants to exercise their corporate functions in a foreign country, it is not for her courts, upon any refined theory respecting the nature of corporate existence, to say that their acts are nevertheless done within our state limits.
Second. The act of incorporation itself assumes that the Republic of Eew Granada have granted the necessary privilege, which privilege the defendants were to acquire; and the allegations in the complaint show that they are exercising the privilege which the charter intended they should acquire. We know of no principle or theory which forbids that our Legislature should confer upon an association of individuals purposing to carry on business in a foreign country, the privileges and immunities of a corporation in our own tribunals; and if this be done, it does not affect the nature of the acts done in such foreign country. It may affect the individual responsibility of the members of the association when proceeded against in our courts; but it does not make the whole responsible for ah act for which neither would be liable if no such corporate privilege were conferred. The *81 business so authorized to be done is in every sense done in such foreign country, and done there by the sanction of our law. Whatever, therefore, may be said of the incapacity of our corporations to remove from the state, they may do what their charter authorizes them to do, where the charter authorizes them to do it. And to say that they must be deemed to do it here is to contradict the law itself, and so by theoretical construction to hold in the present case that the defendants are carriers of passengers by railroad in this state, when by the laws of this state they have no power to construct a railroad or carry passengers here at all. If there was any original principle or theory, having the force of law in this state, upon which our corporations can be said to be incapable of acting without this state, then the charter of these defendants has, as to them, repealed it.
Third. But there is no such principle in the sense in which the argument is used. Whatever the charter of our corporations authorizes them to do, they may do in theory and in fact, where-ever they please, unless such charter by its terms or by implication confines their operations within our limits. Much more may they do so when such authority is expressly given. Whether other countries will permit them to carry on their business within their limits is a question to be settled with the foreign government, and the legality of their acts done in such foreign countries, so long as they are not in contravention of their charter, are to be judged by the foreign law.
Fourth. It is true, as argued by the plaintiff, that the defendants hold their charter in subordination to our laws. But the charter itself is the foundation and.capital law under which they act.
It is also true that our laws relating in terms to corporations apply to and affect them in all their provisions.
So our general statutes apply to them and to their acts; but not otherwise than they do to natural persons. And to assume because the defendants hold their corporate franchises in subordination to our laws, that therefore they are liable for an act done in a foreign country, for which by the general rules of law they are not liable, is to beg the main question. The statute under consideration, in our judgment, most clearly applies alike to all our citizens. The granting of corporate privileges confers upon the grantee no responsibilities except those specified in the *82 charter and such as are peculiar to corporations. All their other rights and liabilities, depending on the common law or the general statutes of the state, are enjoyed or shared in common with natural persons.
We have, therefore, no hesitation in concluding that if the present action could not be sustained under our statute against a natural person, it cannot be sustained against the present defendants. Their being a corporation created by our laws does not affect the question, and we pass therefore to the more general and main inquiry above first mentioned.
II. Whether the statutes of this state passed in 1847 and 1849 giving an action to the personal representative of a deceased, whose death is caused by the wrongful act, neglect or default of another, apply to a case in which the 'act causing such death occurred in a foreign country?
The question is thus confined to the force and operation of our statutes; the complaint in the action is framed upon the very terms and provisions of the statutes.
First. The plaintiff neither in his complaint nor in the argument of his appeal proceeds upon any idea that at the common law or upon any principles of universal justice or equity, any such action as the present could, if there were no such statute, be sustained in the courts of this state. For an injury causing death no action would lie in favor of the representatives of the deceased. To what extent compensation may be compelled by one to whom the deceased owed service, or who by reason of the injury and consequent death was put to expenses, it is not necessary to consider. Cases involving that question do not conflict with the rule that no cause of action was transmitted by the deceased to his representatives, for any personal injury. And no action would lie in favor of the next of kin; for this proposition, in its principle decided in England more than two hundred and fifty years ago (Yelv., 89); and recognized as law from that time onward in that country, and uniformly so held in this country, even if it were not conceded on the hearing, we should not deem it necessary to collect the authorities.
Second. It is also conceded that “the laws of a state or country have no force projprio vigore, in another state or country.” • It seems to us that this, in substance, puts an end to discussion. *83 For if upon the general principles of law the killing of a human being by a wrongful act or negligence, gives to his representatives no cause of action, and if the statutes of Mew York have no operation in Mew Granada, and there is no evidence that such a killing there gives, a right of action, it would seem a necessary consequence that this Court cannot say that any such cause of action exists. These statutes are in contravention of the long settled principles of the law as recognized in this state. They are not declaratory but are special in their nature. They are not founded in any general maxims of jurisprudence of presumed universal application. And there is, therefore,-no presumption that the law of Mew Granada is the same.
It will hardly be denied that the consequences of any act done upon the soil of Mew Granada depend upon the laws of that republic. Contracts made and to be performed there are governed by those laws. An act done there which is lawful there, cannot be held illegal anywhere. Acts done or neglects occurring there, if they are justified by the law of that state,'are justified everywhere, and if these defendants are not liable there, they are not liable here, for as said in Campbell, adm’r, v. Rogers (19 Law Rep., N. S., 329), “if there is no right to recover for an alleged injury in the state where it is said to have been committed, there can be none in any other state.” And, on the other hand, if the state in which the alleged injury is committed has declared the consequences and defined the liability therefor, that law must govern. Let it be supposed that Mew Granada has by law, or in the grant under which the defendants act, prescribed "the cases in which the defendants should be liable for a death caused by the negligence of their servants, and the extent of that liability It would not, we think, be gravely insisted that they use their railroad under any other or greater responsibility than is so prescribed.
It is suggested that the proposition that the laws of Mew York have no force in a foreign state, only means that they cannot demand enforcement there, by the foreign Courts. This comes far short of its full meaning. The laws of Mew York cannot impart a legal character to acts done in a foreign state, or define their legal effect. Mor can they annex to them a responsibility which does not attach to them in that state. *84 While, on the other hand, if it were shown that a right of action for acts done there, existed in such foreign state, by laws of that state not in conflict with our own, it is far from clear that such right of action would not be recognized and enforced in this state.
But it is further sought to maintain this action on the ground that it is founded on a contract to carry the deceased safely, and is brought to recover damages for the breach of that contract.
To this the same answers seem to us equally conclusive. ' The argument, in order to have any force, should show that for such a breach of contract the personal representatives could, without the aid of the statute, maintain an action, whereas no such action could be maintained after the death of the party, whether the alleged breach of contract caused the death or not. The maxim “ actio personalis moritur cum persona” is conclusive in this aspect of the case as well as when the action is in form ex delicto.
We cannot resist the conclusion that our statute is to be regarded, as giving a new action, and as creating a new cause of action, and not as continuing in favor of the representative a cause of action already existing. It is not damages sustained by the deceased which are to be recovered, but a “fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of the deceased.”
And under this statute it is quite immaterial whether the wrongful act or default causing the death involved also a breach of contract or not. To say that a carrier of passengers, who had agreed to carry safely in New Granada, is liable in this state and under our statute, but that one whose act or negligence is not connected with any contract is not so liable, would be making a distinction wholly unwarranted by the terms or just construction of the statute. The statute gives the action whenever death is caused by the wrongful act, neglect or default of another, and whether the cause of death involved also a breach of contract or not, can make no difference in determining whether it applies to cases in which the death was caused in a foreign country.
We have been referred to the case of Doedt, admi'x, v. Wiswall et ail., ex’rs., decided in September last (15 How. Pr. R., 128), in. which it was held by a divided court that the cause of action, *85 under the statute in question, could be prosecuted against the representatives of the wrong doer, if he was a common carrier of passengers, by treating the cause of action as arising on contract and the tort as waived. It is unnecessary to say anything more of that decision, whether we deem it correct or not, than has in substance been already said. The question whether our statute can apply at all when the death was caused in New Granada is not affected by it. But it seems to us that some of the observations of the court not only sustain our views but in some degree conflict with the decision itself. Mr. Justice Gould says, “The action itself never did and never could belong to the party killed.. It is a statute right of property, for which the statute gives an action.” If, then, the statute does not operate within the limits of New Granada, acts occurring there are not actionable anywhere by virtue of the statute.
The statute was designed to regulate and control the conduct of all persons and corporations within our own limits, and protect all upon our soil, and does not assume the protection of the rights of person over the whole world. Such a law no more operates to create a liability for acts done abroad than our laws for the protection of the Sabbath would affect the contracts or other acts of this corporation made or done in New Granada.
One consequence of sustaining the present claim, seems to us inevitable. If such actions can be brought in this state for the injury resulting from death caused by a wrongful act, wherever it is caused, then our courts are open to the prosecution of such actions in favor of all, wherever may be the residence of the parties. Eor if it be not true, that the liability of one who causes death by his act or negligence, depends solely upon the law of the place where such death was caused, then residents of Louisiana, Mississippi and every other state in the Union, nay residents of any country in the world, may have such action here although at home, the place of the occurrence, no liability whatever therefor existed. Our statute makes no distinction between residents and non-residents, and the only necessary condition will be that the defendant is found within our jurisdiction. We cannot think that such a construction of the statute is sound in principle, nor that our Legislature intended to create causes of action for the people of other countries out of acts done abroad, *86 or impose liabilities for acts done in other parts of the world where the governments of such countries have not thought proper to do so.
We have thus noticed the especial grounds urged upon our attention,, in support1 of the appeal by which the force of the opinion of Mr. Justice Bosworth, at Special Term, is sought to be avoided, and we add, that we concur fully in the views there expressed by him.
. The judgment should be affirmed.
Judgment affirmed with costs.*

 The able opinion of Mr. Justice Bacon, in Green v. The Hudson River Railroad Co., 28 Barb., 1, and the authorities cited, bear upon some of the questions discussed in the foregoing case.